Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, SITI AISHAH RIDZUAN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SITI AISHAH RIDZUAN, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF STOCKTON, a California banking corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Bus. & Prof. Code § 17200, *et seq.*<br>4) Cal. Constitution Art. I § 1<br>5) Intrusion Upon Seclusion<br>6) Unjust Enrichment |

Plaintiff SITI AISHAH RIDZUAN ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Defendant BANK OF STOCKTON, a California banking corporation ("Defendant" or "Bank of Stockton"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I. NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.bankofstockton.com (the "Website"), a website that Defendant provides for public access and use.

2. Plaintiff personally used the Website during the class period, including on August 11, 2026, and preserved an HTTP archive file, commonly known as a HAR file, of one of her own browsing sessions. A HAR file is a record of the network exchanges between a browser and the servers with which it communicates, including the requests the browser sends, the headers and parameters those requests carry, and the responses received.

3. Plaintiff's HAR file accordingly records the requests her browser transmitted to the Third Party identified below during that session, including the named fields carrying the contents of her communications and the persistent identifier transmitted with them. The figures reproduced below are from an independent technical investigation counsel commissioned, which replicated the URLs and user flows recorded in the HAR file, and are included as corroboration.

4. During her use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting a third party to intercept the contents of her communications and reveal the banking and financial subject matter she was reading about.

5. Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page addresses identifying what she

was browsing, the page titles identifying the subject matter of the pages she was reading, and the address of the page she had come from, by causing each such communication to be duplicated and routed to the Third Party over a separate channel as part of the same page load.

6. As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technology on the Website that intercepts the contents of users' electronic communications and transmits them without notice or consent. The Third Party did not receive a bare address. It received a structured event in which the page the user was viewing had already been described in words, under a field the recipient's own software defines and consumes, together with the address of the page the user had just come from and the identifier by which that recipient recognizes the user across sessions.

7. Defendant deploys this interception technology in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Plaintiff directly observed the Website configured in this manner during her August 11, 2026 session, and it remains so configured. On information and belief, and subject to proof following discovery of Defendant's tag-management records and its agreements with the Third Party, the Website was configured in this manner throughout the class period.

## II. GENERAL ALLEGATIONS

8. A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

9. When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page addresses identifying what the user is browsing, page titles identifying the subject matter of the page, the address of the page from which the user arrived, session-

level identifiers, and browser and device characteristics.

10. When users visit the Website, Defendant causes tracking technology to be embedded in visitors' browsers. That technology includes, but is not limited to, the following:

- The Google Tracker

11. The third party who operates the above-listed tracker uses the intercepted contents of users' communications collected via the Website for its own independent purposes, which go beyond Defendant's direct needs, for its own financial gain. Google uses them to deliver and improve its services, to measure the effectiveness of advertising, and to personalize the content and advertising shown to users on Google's own properties and on the sites and apps of its partners. The above-listed tracker is referred to herein as the "Tracker" and its operator, Google LLC, is referred to as the "Third Party."

12. The Tracker is operated by Google LLC, whose technology is branded Google Analytics. Defendant knowingly embeds and deploys the Tracker on the Website and configures it to execute automatically within users' browsers upon page load. The Tracker's transmissions carry Defendant's own Google Analytics measurement ID, G-B3N6074GYW. The Tracker is not a resource users request and is not necessary to render the Website's content or functionality.

13. Defendant configured the Website so that the contents of each user's communication with the Website were duplicated into a separate third-party transmission. When a user's browser requested a page, code that Defendant embedded on the Website obtained the contents of that communication from the state of the browser for the page then being loaded, wrote those values into named fields of a separate request, and directed the browser to send that request to servers the Third Party controls. That additional transmission served no part of the user's request for the page. No user action was required and none of it was visible.

14. Plaintiff and the Class Members did not consent to the installation,

execution, embedding, or injection of the Tracker on their devices and did not consent to the contents of their communications with the Website being intercepted by a third party. The Website did not display any consent banner, pop-up, cookie notice, or other authorization mechanism requesting permission before deploying the Tracker to intercept user communications. Defendant did not obtain express prior consent for the interception and transmission of the contents of users' communications for advertising, analytics, or monetization purposes.

15. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

## III. PARTIES

16. Plaintiff SITI AISHAH RIDZUAN is a California citizen residing in Contra Costa County, California, and has an intent to remain there. Plaintiff was in California when she visited the Website, which occurred during the class period including but not limited to on August 11, 2026. The allegations set forth herein are based on the Website as configured when Plaintiff visited it.

17. Defendant BANK OF STOCKTON is a banking corporation organized and existing under the laws of the State of California, with its principal place of business in Stockton, California. Defendant owns, operates, and controls the Website. Through the Website, Defendant markets and offers consumer and commercial banking products and services, including personal lending products, savings plans, retirement solutions and credit card products, and offers a mobile banking application to the public.

18. Defendant owned, operated and controlled the Website at all times during the class period, and publicly identifies www.bankofstockton.com as its own website.

19. Through the Website and its branch network, Defendant conducts banking business in California.

## IV. JURISDICTION AND VENUE

20. Defendant is subject to the general personal jurisdiction of this Court. Defendant is a banking corporation organized under the laws of the State of California

and maintains its principal place of business in Stockton, California. Defendant is therefore at home in this State, and this Court may exercise jurisdiction over it under Federal Rule of Civil Procedure 4(k)(1)(A) and Cal. Code Civ. Proc. § 410.10.

21. Plaintiff's claims also arise out of and relate to Defendant's conduct in this State. Plaintiff accessed the Website from California, and the interception of the contents of her communications occurred on her device in California, through a Tracker that Defendant placed and configured on the Website.

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of 18 U.S.C. § 2511(1)(a) of the Federal Wiretap Act.

23. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

24. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant regularly transacts business in this District, operates the Website that serves California residents in this District, and is subject to personal jurisdiction here; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, including Plaintiff's California-located use of the Website from her Contra Costa County residence and the execution of the Tracker on her device in this District; and (3) Plaintiff resides in this District.

## V. FEDERAL AND STATE PRIVACY LAWS

### 1. The California Invasion of Privacy Act (CIPA)

25. The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance

technologies, declaring that "the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

26. Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

27. CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein, which implicate traditional interests in personal privacy, constitute concrete injuries sufficient to establish Article III standing. The communications intercepted here were not bare records of connection. They were the addresses and the titles of pages concerning personal loans, savings plans, retirement solutions and credit cards, together with the address of the page the visitor had just come from, each transmitted to a third party attached to a persistent identifier that recognizes the browser across sessions.

28. Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

**2. The Federal Wiretap Act**

29. The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic communications. Congress enacted the statute to safeguard the privacy of communications against unauthorized interception, recognizing that unchecked

surveillance technology poses a fundamental threat to individual liberty.

30. The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

31. A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs.

## VI. SPECIFIC ALLEGATIONS

32. During her use of the Website, Plaintiff navigated to the following pages, unaware that Defendant was causing and permitting the Third Party to intercept the contents of her communications:

- https://www.bankofstockton.com/personal_loans;
- https://www.bankofstockton.com/savings_plans;
- https://www.bankofstockton.com/retirement-solutions; and
- https://www.bankofstockton.com/credit_cards.

33. During those visits the Tracker described below operated on the Website. The Tracker received the contents of Plaintiff's communications as to each of the pages identified above in human readable terms. Those requests carried no cookie header; the identifier described below was instead carried in the outbound requests themselves.

### 1. The Google Tracker

34. Defendant embedded and configured on the Website an analytics tag

operated by Google LLC, which Google brands Google Analytics. Defendant deploys Google's tagging library, gtag.js, which Plaintiff's browser downloaded from Google's www.googletagmanager.com infrastructure during her session. The transmissions carry Defendant's own Google Analytics measurement ID, G-B3N6074GYW. The tag is not a resource Plaintiff requested and is not necessary to render the Website's content.

35. Plaintiff's browser began loading each page from Defendant's servers. As part of that same page load, and without any further request or action by Plaintiff, the browser executed Google's code. That code obtained the address of the page then being loaded, the title of that page, and the address of the page from which Plaintiff had arrived, each from the state of the browser for that page, wrote those values into named parameters of a new request, and directed Plaintiff's browser to send that request to Google at www.google-analytics.com.

36. The values Google received in those named parameters, from Plaintiff's own session, included the full address of each of the pages identified above and the full title of each. Those titles were "Personal Loans | Bank of Stockton," "Savings Plans | Bank of Stockton," "Retirement Solutions | Bank of Stockton," and "Credit Cards | Bank of Stockton."

37. Each of those same requests also carried, in a further named parameter, the address of the page from which Plaintiff had arrived at the page then being loaded. The request sent as she loaded the personal loans page carried the address of the page of the Website she had been on immediately before it. The request sent as she loaded the savings plans page carried the address of the personal loans page. The request sent as she loaded the retirement solutions page carried the address of the savings plans page. The request sent as she loaded the credit cards page carried the address of the retirement solutions page. Google therefore received, in each single transmission, both the page Plaintiff was then reading and the page she had been reading immediately before it.

38. Google received a further transmission from the credit cards page. After Plaintiff had been engaged with that page, her browser transmitted to Google an event

identifying an outbound link she had followed, carrying in named parameters the category of the interaction, described as an outbound link, and the full address of the destination, being the listing for Defendant's own mobile banking application in Apple's application store. That transmission carried the address and title of the credit cards page and the same identifier described below.

39. A persistent Google identifier was transmitted in a named parameter of each of those same requests, and it held a single value throughout Plaintiff's session. The numerical portion of that value was identical to the numerical portion of the Google Analytics identifier stored in Plaintiff's own browser for the Website. A separate parameter transmitted with each request recorded that the session in which Plaintiff was then browsing was not her first. The identifier was carried in the outbound requests themselves rather than assigned to Plaintiff's browser in a response.

40. Google publishes documentation describing what its tagging library sends and when. Google explains that a page-view event is dispatched from the operator's website to Google Analytics whenever a visitor loads a page, or whenever the active site changes the browser's history state, and that this occurs automatically without the operator sending anything further. The same document identifies the parameters that carry the page title and the page address, and specifies that their default values are drawn from the browser's own title and location properties for the page then loaded. Measure pageviews, Google Analytics, Google for Developers, https://developers.google.com/analytics/devguides/collection/ga4/views. In the documentation for the report in which it presents that information, Google explains that the page title it reports is derived from the title element of the page's own HTML. [GA4] Pages and screens report, Analytics Help, https://support.google.com/analytics/answer/12926732.

41. Google describes what it learns from those values. Google describes one of the views available in its real-time report as showing, organized by page title, which content the visitors to a site are viewing, and describes that report as presenting page and

screen view data as it arrives. [GA4] Realtime report, Analytics Help, https://support.google.com/analytics/answer/9271392; Measure pageviews, supra.

42. Google describes the identifier as the means by which it recognizes an individual across visits. Google explains that in its user-exploration tool each row corresponds to a single distinct user, identified by what Google terms the effective user identifier. Google explains that where no signed-in user identifier is available, the effective user identifier is the device identifier, and that for a website the device identifier is the client identifier, which is the same parameter transmitted from Plaintiff's browser as alleged above. Google describes that tool as permitting the operator to examine the activities of each individual user and to view a chronological record of that user's activity on the site. [GA4] User explorer, Analytics Help, https://support.google.com/analytics/answer/9283607.

43. Google describes what it does with the information. In its published privacy disclosures Google groups its analytics tools together with its advertising services, and states that when a person visits a website using any of them the visitor's browser automatically sends information to Google, including the address of the page being visited and the visitor's Internet Protocol address. Google states that it uses the information shared with it by such sites to deliver its services, to maintain and improve them, to develop new services, to measure the effectiveness of advertising, to protect against fraud and abuse, and to personalize the content and advertising shown to users both on Google's own properties and on the sites and applications of its partners. How Google uses information from sites or apps that use our services, Google Privacy & Terms, https://policies.google.com/technologies/partner-sites.

44. Reporting which content a visitor viewed, and attributing that content to an identifier that recognizes her across sessions, are operations performed on the transmitted values. Neither can be performed without ascertaining what those values say. The title of a page is a description of that page in words, and it is transmitted in a parameter Google's own software defines for that purpose and consumes as the content

dimension it reports.

45. The page address, the page title, the address of the referring page and the identifier were transmitted in readable form, without hashing, encryption at the field level, or truncation of any kind.

46. Each such request identified the page Plaintiff was then reading in two independent ways within the same transmission: by its full address, in one named parameter, and by its title in words, in another. Each request further carried, in its own referrer header, the address of the Website itself, identifying to Google the site from which the request originated. The contents of Plaintiff's communication with the Website were therefore not merely diverted but replicated.

47. Figures 1 through 4 are network captures of outbound requests transmitted to Google during the loads of four of the pages identified above. Each shows the page address and the page title carried as values of named parameters of the request, together with the Google identifier. Spaces and the separating character within the title appear in the standard encoding used to carry values in a request; the words themselves are unaltered.

48. Figure 1 captures the request transmitted to Google as the personal loans page loaded. The address parameter carries the address of that page. The title parameter carries the words "Personal Loans | Bank of Stockton." Defendant's measurement ID and the persistent identifier assigned to Plaintiff's browser appear in the same request, alongside those words.

/ / /

/ / /

/ / /

**Figure 1**




49. Figure 2 captures the request transmitted as the savings plans page loaded, a different page of the Website concerning a different subject. The title parameter no longer carries the words shown in Figure 1. It carries the words "Savings Plans | Bank of Stockton." The measurement ID and the identifier are unchanged.

**Figure 2**




50. Figure 3 captures the request transmitted as the retirement solutions page

loaded. The title parameter again carries different words, being "Retirement Solutions | Bank of Stockton." The measurement ID and the identifier are again unchanged, so the description of the visitor's reading changes from request to request while the person to whom it is attributed does not.

**Figure 3**




51. Figure 4 captures the request transmitted as the credit cards page loaded. The title parameter carries the words "Credit Cards | Bank of Stockton." This is the page from which Plaintiff followed the outbound link to Defendant's mobile banking application described above, and the request identifying that link carried the same identifier as the four requests shown in the figures.

/ / /

/ / /

/ / /

**Figure 4**




52. The four captures accordingly show Google receiving, page by page, a different description in words of what Plaintiff was reading, being in turn borrowing, saving, retirement and credit, each one attributed to the same identifier for the same person.

53. Google LLC is not a party to the communications between Plaintiff and the Website. It operates an advertising and audience data business of its own and has the capability to use its record of these interactions for its own purposes. Defendant aided and abetted that interception by embedding and configuring the tag on the Website.

### 2. Defendant's Representations to Visitors

54. Defendant published on the Website an Online Privacy Notice, located at https://www.bankofstockton.com/online-privacy-notice, which was in effect and available to visitors when Plaintiff visited the Website.

55. Under a heading addressing web browser settings and tracking, that Notice tells visitors that Defendant's website tracks their activities only while they are on that website; that Defendant collects no personally identifiable information about a visitor who does not request or register for one of its services; and that the tracking Defendant does conduct is accomplished by means of cookies that Defendant itself places on the

visitor's computer.

56. Neither representation describes the conduct alleged above. The address of each page Plaintiff viewed, the title of each such page, and the address of the page from which she had arrived were not confined to Defendant's website. They were transmitted to Google LLC, a separate company, which states that it uses information shared by sites using its analytics tools to deliver its own services, to measure the effectiveness of advertising, and to personalize the content and advertising shown to users on its own properties and on the sites and apps of its partners. Nor was that transmission facilitated by a cookie Defendant placed on Plaintiff's device. It was an outbound transmission of the contents themselves, carrying an identifier by which Google recognizes a browser across sessions.

57. The Notice's separate section addressing third parties does not describe the conduct alleged above either. That section speaks of third parties collecting information while acting on Defendant's behalf. Where it addresses tracking across websites, it frames that tracking as a consequence of the visitor's own conduct elsewhere, stating that third parties may from time to time offer services on the Website, and that a visitor who accesses such a third party's own website, or who supplies information to it, may have her activity tracked across websites by that third party. Plaintiff did not access Google's website in the course of the browsing alleged above, and she supplied Google no information. The transmissions alleged above occurred automatically upon the loading of Defendant's own pages.

58. Neither the Online Privacy Notice nor Defendant's California Consumer Privacy Act Disclosure identifies Google LLC, Google Analytics, or any other analytics or advertising provider by name.

59. In its California Consumer Privacy Act Disclosure, Defendant further represents that it shares consumer information only as permitted by law, that it shares that information only with vendors servicing the products and services the consumer has selected, and that it requires those vendors not to sell, share or use the information for

any other purpose.

60. Plaintiff was therefore given no accurate description of the conduct alleged above before it occurred. She was affirmatively told that Defendant's tracking of her activities was confined to Defendant's own website and was accomplished by cookies Defendant placed on her own device. Both statements were inconsistent with what Defendant had configured the Website to do.

**3. Interception While in Transit**

61. Two sets of code ran as part of Plaintiff's browser's single attempt to load each page identified above. The first was the Website's own code, which delivered the page Plaintiff had asked for. The second was the Tracker's code, which Plaintiff did not request and which served no part of her request for that page. Plaintiff communicated with Defendant's servers in order to obtain the content she was reading. She did not communicate with the Third Party for that purpose, or for any purpose of her own.

62. The Tracker did not obtain the contents of Plaintiff's communications from Defendant's stored records, and there was no separate transaction in which Defendant later furnished them. The values the Tracker transmitted were read from the state of the browser for the page then being loaded, and they identified that page and no other.

63. The Tracker acquired the contents of Plaintiff's communications at the point those contents existed in her browser as part of the page she had requested. Google's code, executing within the load of that page, read the page's address, its title, and the address of the page from which Plaintiff had arrived out of the state of the browser for that page, and held those values before composing and dispatching any request of its own. What that code obtained, it obtained from the communication itself.

64. Each of those transmissions was therefore initiated by the Tracker's own code, executing within the load of the page Plaintiff had requested, and the contents of those communications were acquired while in transit.

65. The duplication was not a single copy. As each of the pages identified above loaded, the address of that page, a description of that page in words, and the address of

the page from which Plaintiff had arrived were each written into named parameters of a separate request to Google. The contents of Plaintiff's communications with the Website were therefore replicated and routed to a commercial recipient over a separate channel. Plaintiff did not request content from that recipient, it was not a party to her communications with the Website, and it was not made known to her.

66. The transmission that accompanied each page load required no action by Plaintiff whatever. None of the transmissions described above was visible to Plaintiff, and she had no opportunity to see, review, prevent or object to any of them before it occurred. Plaintiff was given no indication that following a link on the credit cards page would cause a further description of her activity to be transmitted to Google.

67. Defendant knew of this arrangement and constructed it. Defendant's own Google Analytics measurement ID is carried on every transmission described above. Defendant deployed Google's tagging library on the Website under that measurement ID and configured it to execute automatically when visitors load pages of the Website.

## VII. CLASS ALLEGATIONS

68. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

> All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website, were intercepted by the Tracker, or by any other third party to which Defendant caused those contents to be transmitted, between August 11, 2025 and the present.

69. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

70. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents of visitors' HTTP requests, the titles of the pages they viewed, and the addresses of the pages from which they arrived, to the Tracker;
- Whether the URL contents of those requests, the titles of the pages visitors viewed, and the addresses of the pages from which they arrived, constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);
- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);
- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);
- Whether Defendant's conduct constitutes an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200;
- Whether Plaintiff and Class Members are entitled to statutory damages;
- Whether Class Members are entitled to injunctive relief;
- Whether the Defendant's conduct violates the California Constitution;
- Whether the Defendant's conduct constitutes an intrusion upon seclusion;
- Whether Class Members are entitled to restitution of benefits Defendant obtained through the challenged conduct; and
- Whether Class Members are entitled to restitution.

71. TYPICALITY: As a person who visited the Website and whose URL contents and page titles were intercepted, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Tracker is typical to Class Members.

72. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

73. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

## VIII. <u>FIRST CAUSE OF ACTION</u>

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against Defendant

74. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this cause of action on behalf of herself and the Class.

76. California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose, any information so obtained. The same subdivision separately reaches any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

77. The page addresses, the page titles identifying the subject matter of the pages Plaintiff and Class members were reading, and the addresses of the pages from which they arrived, all transmitted in named payload fields, constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, Defendant caused those contents to be duplicated and routed to Google over a separate channel at the endpoint identified above, and Google acquired the contents it received while the same communication was in transit.

78. Defendant intentionally configured the Website to transmit Plaintiff's and Class members' page addresses, page titles and referring page addresses to the Tracker

as set out above, and permitted the Third Party to use that information for the reporting, audience and advertising functions alleged above. The Third Party is not a party to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by the Tracker, and no other exception to § 631(a) applies. Defendant is independently liable under the aiding provision of § 631(a). Defendant selected the Tracker, obtained an account for it, embedded its code on the Website, configured that code to execute automatically on page load, and caused Plaintiff's own browser to carry out each transmission. In doing so Defendant aided, agreed with, employed and permitted the Third Party to do the acts prohibited by § 631(a), and permitted and caused those acts to be done.

79. Section 631(a) reaches not only reading the contents of a communication but learning its contents or meaning. Reporting which content a visitor viewed, and attributing that content to an identifier that recognizes her across sessions, are each operations performed on what she transmitted, and neither can be performed without ascertaining what the transmitted values say.

80. Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

## IX. <u>SECOND CAUSE OF ACTION</u>

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against Defendant

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Plaintiff brings this cause of action on behalf of herself and the Class.

83. 18 U.S.C. § 2511(1)(a) reaches any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." The Federal Wiretap Act defines

"contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

84. The page addresses, the page titles, and the addresses of the pages from which Plaintiff and Class members arrived are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8), because they communicate the substance, purport and meaning of what Plaintiff and Class members were reading. As described in the preceding tracker-specific allegations, Defendant caused those contents to be duplicated and routed to Google over a separate channel at the endpoint identified above, and Google acquired the contents it received while the same communication was in transit.

85. Defendant intentionally configured the Website to transmit Plaintiff's and Class members' page addresses, page titles and referring page addresses to the Tracker as set out above, and permitted the Third Party to use that information for the functions alleged above. Defendant thereby intercepted those communications and, independently, procured the Third Party to intercept them, by selecting the Tracker, obtaining an account for it, embedding and configuring its code on the Website, and causing Plaintiff's own browser to execute that code and transmit the contents. The Third Party is not a party to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception, and no other exception applies.

86. Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of the sum of actual damages suffered by Plaintiff and the Class and any profits made by Defendant as a result of the violation, or statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, together with punitive damages, reasonable attorney's fees, and other litigation costs reasonably incurred.

/ / /

/ / /

## X. THIRD CAUSE OF ACTION

**Violations of Business & Professions Code § 17200**

**By Plaintiff and the Class Members Against Defendant**

87. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88. Plaintiff brings this cause of action on behalf of herself and the Class.

89. California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct constitutes both an unlawful and an unfair business practice.

90. Defendant's conduct is unlawful. By facilitating the interception of the contents of Plaintiff's and Class members' electronic communications without consent, Defendant violated California Penal Code § 631(a) and 18 U.S.C. § 2511(1)(a). Each statutory violation constitutes a predicate unlawful business act or practice under § 17200.

91. Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class members' URL contents, page titles and referring page addresses to a third-party Tracker for its own analytics and advertising purposes, contrary to its own representations to visitors and without authorization or compensation. The harm to Plaintiff and the Class including but not limited to the interception and commercial exploitation of personal information and the financial value thereof is substantial, is not outweighed by any legitimate countervailing benefit, and could not reasonably have been avoided by Plaintiff or Class members.

92. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data identifying the specific content a user views, including browsing URLs and page titles of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace. The Tracker is designed to use, and on information and belief did use, the intercepted content for the reporting, audience and advertising functions alleged above.

93. Defendant appropriated that value for its own purposes without accurate disclosure, without consent, and without compensation. Defendant obtained the benefit of Plaintiff's and Class members' browsing data in the form of the reporting and audience capabilities described above, including the ability to identify the visitors to its Website and to learn what they were reading about. Plaintiff and Class members were thereby deprived of the economic value of their data and of the full value of a privacy-protective browsing experience they reasonably expected and would have bargained for had the practice been disclosed.

94. Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing its unlawful and unfair practices, restitution of monies acquired by Defendant through those practices, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

## XI. FOURTH CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against Defendant

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

96. Plaintiff brings this cause of action on behalf of herself and the Class.

97. Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

98. Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page addresses and page titles reflecting their browsing activity. California law recognizes a legally protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by a commercial third party for analytics and

advertising purposes without disclosure or consent. The Legislature has separately recognized the privacy interest in a consumer's dealings with a financial institution, and has built a protective regime around it in the California Financial Information Privacy Act, Cal. Fin. Code § 4050 et seq.

99. Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting a bank's website to read about lending, savings, retirement and credit products does not expect that the specific pages she browses, the descriptions of those pages identifying the financial subjects she is considering, and the order in which she moves among them, will be covertly transmitted to a separate commercial company, linked to a persistent identifier that recognizes her browser across sessions, and used for reporting, audience and advertising purposes. That expectation was reinforced here by Defendant's own Online Privacy Notice, which told visitors that its website tracked their activities only while on its website and that such tracking was accomplished by cookies Defendant placed on their devices.

100. Defendant's conduct constitutes a serious invasion of that privacy. By embedding and configuring the third-party tracking technology described above on the Website, Defendant caused the covert transmission to that third party, in named parameters of its own requests, of the addresses and titles identifying the specific financial subject matter Plaintiff and Class Members were reading about, together with the address of the page each visitor had just come from, each attributed to a persistent identifier that recognizes the browser across sessions. Measured against community norms rather than against any characteristic particular to Plaintiff, that conduct constitutes an egregious breach of social norms.

101. As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other

relief authorized by law.

## XII. FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

102. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

103. Plaintiff brings this cause of action on behalf of herself and the Class.

104. The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

105. Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding third-party tracking technology that intercepted the URL contents, page titles and referring page addresses of those communications and transmitted them to a third party. Defendant did so without Plaintiff's knowledge or consent. Plaintiff had a reasonable expectation of privacy in the contents of those communications.

106. The intrusion is highly offensive to a reasonable person. The pages identified above are descriptive on their face, and the addresses and titles transmitted identify the specific financial subject matter each visitor was reading about, including personal loans, savings plans, retirement solutions and credit cards. Defendant covertly caused that information to be transmitted to a separate commercial company, together with the address of the page the visitor had just come from, attributing it to a persistent identifier that recognizes the visitor's browser across sessions. A reasonable person would find the covert transmission of the specific financial subject matter of her own reading to a commercial company, together with its description in words and the order in which she moved among those subjects, without prior notice, without any opportunity to prevent it before it occurred, and contrary to Defendant's own published

representations about the scope and means of its tracking, highly offensive. The offensiveness is measured objectively and does not depend on any characteristic particular to Plaintiff.

107. As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XIII. SIXTH CAUSE OF ACTION

### Restitution and Quasi-Contract (Unjust Enrichment)

### By Plaintiff and the Class Members Against Defendant

108. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

109. Plaintiff brings this cause of action on behalf of herself and the Class.

110. Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

111. Defendant received a benefit from the conduct alleged above. Defendant deployed the Tracker under its own account in order to identify the visitors to its Website, to learn what those visitors were reading about, and to measure and improve the marketing of its own banking products. The contents of Plaintiff's and Class Members' communications with the Website were the input that made those capabilities available to Defendant, and Defendant obtained them without paying Plaintiff or Class Members anything.

112. Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By causing the URL contents, page titles and referring page addresses of Plaintiff's communications to be

transmitted to a third party under Defendant's own account, Defendant obtained the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective property interest.

113. It is inequitable for Defendant to retain those benefits without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and its failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

114. Plaintiff and the Class seek restitution of the benefits Defendant obtained from the interception and commercial exploitation of Plaintiff's and Class Members' own communications, measured by the value Defendant realized from those communications and not by any broader measure of Defendant's revenues. Plaintiff pleads this claim in the alternative. Plaintiff lacks an adequate remedy at law as to the relief sought here, because the statutory damages available under Cal. Penal Code § 637.2 and 18 U.S.C. § 2520 are fixed sums that neither reach nor are measured by the benefits Defendant obtained from the ongoing commercial exploitation of Class Members' intercepted communications, and because restitution of those benefits is measured by Defendant's gain rather than by Plaintiff's loss.

## XIV. PRAYER FOR RELIEF

115. WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;
2. An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;
3. An order enjoining Defendant from continuing the conduct alleged

herein;

4. Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;
5. Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of the sum of actual damages and any profits made by Defendant as a result of the violation, or whichever is the greater of $100 a day for each day of violation or $10,000;
6. Punitive damages pursuant to 18 U.S.C. § 2520;
7. Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;
8. Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;
9. Compensatory and nominal damages for intrusion upon seclusion;
10. Restitution of the benefits by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;
11. Prejudgment interest;
12. Reasonable attorney's fees and costs; and
13. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

116. Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated: August 21, 2026 **NATHAN & ASSOCIATES, APC**

By: *<u>/s/ Reuben D. Nathan</u>*

Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq.
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*